**Dr. Robert L. SUSSMAN and Shirley Sussman, Plaintiffs,**

v.

**Jay D. STONER; the Group, Inc., Real Estate Associates, a Colorado corporation; Harold W. Johnson; Agri–Enterprises, Inc., a Colorado corporation; Gene E. Fischer; and Stewart Title Company of Larimer County, a Colorado corporation, Defendants.**

No. CIV. A. 00–B–571.

United States District Court, D. Colorado.

March 2, 2001.

---

**1234**

I. Thomas Bieging, Ronda Lee Sandquist, Robert Christopher Brown, McKenna & Cuneo, Denver, CO, for plaintiffs.

Joseph A. Cope, Frascona, Joiner & Goodman, Boulder, CO, for Jay D. Stoner, Group, Inc., Real Estate Associates, defendants.

Mark C. Overturf, Overturf & McGath, PC, Denver, CO, Thomas W. Metcalf, Fort Collins, CO, for Harold W. Johnson, Agri-Enterprises, Inc., defendants.

Thomas Baker Quinn, White & Steele, P.C., Denver, CO, for Gene E. Fischer, defendant.

Kelsey J. Smith, David Stanley Power, Liggett, Smith & Williams, PC, Fort Collins, CO, for Stewart Title Co. of Larimer County, defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiffs Dr. Robert L. Sussman and Shirley Sussman (together "the Sussmans") bring claims for breach of fiduciary duty against Defendants Robert L. Johnson and Agri-Enterprises, Inc.; breach of fiduciary duty against Defendant Gene E. Fischer; breach of the statutory duty of brokers/ negligence *per se* against Defendants Jay D. Stoner, The Group, Inc. Real Estate Associates, Mr. Johnson, and Agri-Enterprises; negligent misrepresentation against Mr. Johnson, Agri-Enterprises, and Mr. Fischer; breach of contract against Mr. Johnson and Agri-Enterprises; fraud against Mr. Stoner, Mr. Johnson, and Mr. Fischer; professional negligence against Mr. Stoner, The Group, Mr. Johnson, Agri-Enterprises, and Mr. Fischer; and deposit of contested sums against Defendant Stewart Title Company of Larimer County. Mr. Stoner and The Group (collectively "Defendants") move to dismiss the Sussmans' third, sixth, and seventh claims for relief, or in the alternative for a more definitive statement. The motion is adequately briefed and oral argument would not materially aid its resolution. For the reasons set forth below, I grant Defendants' motion. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

## I. Facts

The following allegations are taken from the Sussmans' Complaint. The Sussmans live in Baltimore, Maryland. In 1988 they purchased 230 acres of land in Larimer County, Colorado ("the Property"), 68 shares of water from the North Poudre Irrigation Company ("Poudre water"), and two acre feet of Weld County, Colorado water ("Weld water") from the Schnorrs. The purchase was pursuant to carry back financing. Mr. Johnson is a real estate broker employed by Agri-Enterprises. He was the real estate broker for the Schnorr/ Sussman transaction. Mr. Fischer, a Colorado attorney, drafted the financing documents and performed the title work. Mr. Fischer also acted as a trustee for the Poudre and Weld water shares from 1988 to 1998. He was to transfer the shares to the Sussmans in 1998 when they paid off the mortgage.

Prior to 1998 Mr. Johnson contacted the Sussmans more than once, attempting to persuade them to sell a portion of their water shares. During those conversations Mr. Johnson told the Sussmans that they owned more water than necessary to maintain or develop the Property. In 1998 he again contacted the Sussmans, attempting to persuade them to sell the Property. In 1999 the Sussmans hired Mr. Fischer to perform an investigation and market analysis and advise them regarding sale of the land. They also hired Mr. Johnson and Agri-Enterprises to act as their exclusive selling agent for sale of the Property. They expected that Mr. Johnson would provide them with a market analysis as well. Although the entire Property was

for sale, Dr. Sussman informed Mr. Johnson that he wished to retain a minimum of 28 shares of water.

Mr. Stoner is a Colorado real estate agent employed by The Group. He was also a real estate developer and principal in Stoner and Company. In July 1999 Mr. Fischer contacted the Sussmans, informed them that he had consulted with Mr. Stoner regarding the value of the Property, and told them that Mr. Stoner had expressed an interest in purchasing the Property. The Sussmans allege that at this time Mr. Fischer had not engaged in a due diligence investigation regarding the value of the land or water.

On July 30, 1999 Mr. Johnson informed the Sussmans that comparable properties in the area were selling for $5,000 per acre. He also told Dr. Sussman that the Poudre water was worth approximately $14,000 per share. The actual value of the Poudre water was as much as $17,000 per share. On August 20, 1999 Mr. Fischer incorrectly informed the Sussmans that they could not sever a portion of the water shares, as "[t]he shares of North Poudre water must necessarily go with the farm . . . ." Complaint ¶ 31. Mr. Fischer than conveyed, again without performing due diligence, an offer from Stoner and Company to purchase the Property for $2,170,000. The purposed contract included a 3% commission to The Group because Mr. Stoner was acting as a broker for the deal. The Sussmans responded to Mr. Fischer that Mr. Johnson was their exclusive agent, and that they still wished to withhold 28 shares of water from the sale.

Mr. Johnson subsequently listed the Property, priced at $2,650,000. On September 23, 1999 Mr. Johnson conveyed an offer from Stoner and Company to buy the Property for $2,510,000. The offer again included a 3% commission to The Group based on Mr. Stoner acting as a broker for the deal. The offer was contingent upon

Stoner and Company's determination that the Property was suitable for development, and the contingency could be waived by Stoner and Company at any time up to December 24, 1999. The Sussmans again informed Mr. Johnson that they wished to retain 28 shares of water. They were told that Mr. Stoner had already arranged for resale of any shares not needed for development, and thus all water was included in the offer.

The Sussmans then presented Stoner and Company with a counter-offer. The counter-offer was identical to the offer except that it limited the contingency waiver period to December 3, 1999. Stoner and Company accepted the counter-offer. Closing was set for February 29, 2000. After execution of the contract, and unbeknownst to the Sussmans, the value of the Poudre water began to rise rapidly. None of the Defendants informed the Sussmans of this change.

On November 9, 1999 Stoner and Company requested that the contract be modified to extend the terms of the contingency waiver to December 10, 1999. The Sussmans were informed by Mr. Johnson that the extension was designed to give Mr. Stoner a chance to meet with Larimer County officials to get preliminary approval for his proposed development on the Property. The meeting was set for December 3, 1999. Neither Mr. Stoner nor Mr. Johnson informed the Sussmans of the jump in water prices, and neither informed them of the risks or benefits of extending the contract. The Sussmans agreed to the modification on November 11. At the time of the modification, the Poudre water was worth as much as $28,000 per share. On November 22, 1999 Mr. Johnson called the Sussmans and informed them for the first time that water prices had risen, and that he believed that prices were now holding steady at $22,000 per share. In December

1999 the value rose as high as $32,500 per share.

On December 8, 1999 Stoner and Company waived the contract contingencies. The closing took place on February 29, 2000. On that date the water was valued at $42,000 per share. On March 2, 2000 Mr. Fischer informed Stewart Title Company that he was holding and refusing to transfer the Poudre and Weld water shares pending payment of fees purportedly owed by the Sussmans to Mr. Fischer. The Sussmans paid the demanded amount under protest, arguing that the wrongful withholding constituted slander of title. Stewart Title is currently holding in escrow 6% of the sale price of the Property, an amount representing the brokers' commissions.

The Sussmans allege that Mr. Stoner was a transaction-broker, and the terms of Colo.Rev.Stat. § 12–61–807(2) required him to disclose both the rising value of the water and the effect of that rising value on the contract modification. They allege that had they known of the rising value, they either would have demanded additional consideration for the contract extension, or would have rejected the proposed modification. They therefore allege that Mr. Stoner breached his duties under the statute, fraudulently concealed the rising water value, and negligently performed his professional duties. They allege that The Group is liable on the grounds of *respondeat superior*. I assume for purposes of this motion that Mr. Stoner was a transaction-broker.

## II. Motion to Dismiss

Under Rule 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *See id.* In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir.1999).

Fed.R.Civ.P. 12(b)(6) does not provide a procedure for resolving a contest about the facts or the merits of the case. Thus, one must read Fed.R.Civ.P. 12(b)(6) in conjunction with Fed. R. Civ. P 8(a), which sets forth the requirements for pleading a claim in federal court. Fed. R. Civ. P 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it "must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. A plaintiff is not required to state precisely each element of the claim. *See* 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154–59 (1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988).

Mr. Stoner and The Group move to dismiss the Sussmans' third, sixth, and seventh claims for relief. I consider each in turn.

### A. Breach of the Statutory Duty of Brokers/ Negligence Per Se

■ Defendants first move to dismiss the Sussmans third claim for relief, breach of the statutory duty of brokers/ negligence *per se,* on the ground that they had

no duty to tell the Sussmans the value of the water nor the effect of the contract modification. I agree.

Effective January 1, 1994 the Colorado General Assembly enacted "An Act Concerning Brokerage Relationships in Real Estate Transactions." *See* Colo. Sess. Laws 1993, ch. 218 at 979 (codified as Colo.Rev.Stat. § 12–61–801, *et seq.*). The legislative declaration contained in the 1994 Act states:

> (1) The general assembly finds, determines, and declares that the public will best be served through a better understanding of the public's legal and working relationships with real estate brokers and by being able to engage any such real estate broker on terms and under conditions that the public and the real estate broker find acceptable. This includes engaging a broker as a single agent, subagent, dual agent, or transaction-broker. Further, the public should be advised of the general duties, obligations, and responsibilities of a real estate broker in any particular real estate transaction. (2) This part 8 is enacted to govern the relationships between real estate brokers and sellers, landlords, buyers, and tenants in real estate transactions.

Colo.Rev.Stat. § 12–61–801.

■ With this statute, Colorado was the first state to create a non-agent real estate broker. *See* Patricia A. Wilson, *Nonagent Brokerage: Real Estate Agents Missing in Action,* 52 OKLA. L. REV. 85, 90 (1999). Although the statute still allows a broker to act as an agent for a buyer or seller, "[u]nless a different relationship is established by the parties in writing . . . it is presumed that a broker is acting as a nonagent 'transaction broker.'" Katherine A. Pancak, Thomas J. Miceli & C.F. Sirmans, *Real Estate Agency Reform: Meeting the Needs of Buyers, Sellers, and Brokers,* 25 REAL ESTATE L.J. 345, 355

(1997). A transaction-broker is not an agent for either party, *see* § 12–61–807(1), but rather "assists one or more parties throughout a contemplated real estate transaction with communication, interposition, advisement, negotiation, contract terms, and the closing of such real estate transaction without being an agent or advocate for the interests of any party to such transaction." § 12–61–802(6).

The duties of a transaction-broker are dictated by statute. The statute states in pertinent part:

> A transaction-broker shall have the following obligations and responsibilities:
>
> (a) To perform the terms of any written or oral agreement made with any party to the transaction;
>
> (b) To exercise reasonable skill and care as a transaction-broker, including, but not limited to:
>
> (I) Presenting all offers and counteroffers in a timely manner regardless of whether the property is subject to a contract for sale or lease or letter of intent;
>
> (II) Advising the parties regarding the transaction and suggesting that such parties obtain expert advice as to material matters about which the transaction-broker knows but the specifics of which are beyond the expertise of such broker;
>
> (III) Accounting in a timely manner for all money and property received;
>
> (IV) Keeping the parties fully informed regarding the transaction;
>
> (V) Assisting the parties in complying with the terms and conditions of any contract including closing the transaction;
>
> (VI) Disclosing to all prospective buyers or tenants any adverse material facts actually known by the broker including but not limited to adverse material facts pertaining to the title, the physical con-

dition of the property, any defects in the property, and any environmental hazards affecting the property required by law to be disclosed;

(VII) Disclosing to any prospective seller or landlord all adverse material facts actually known by the broker including but not limited to adverse material facts pertaining to the buyer's or tenant's financial ability to perform the terms of the transaction and the buyer's intent to occupy the property as a principal residence; and

(VIII) Informing the parties that as seller and buyer or as landlord and tenant they shall not be vicariously liable for any acts of the transaction broker;

. . .

(3) The following information shall not be disclosed by a transaction-broker without the informed consent of all parties:

(a) That a buyer or tenant is willing to pay more than the purchase price or lease rate offered for the property;

(b) That a seller or landlord is willing to accept less than the asking price or lease rate for the property;

(c) What the motivating factors are for any party buying, selling, or leasing the property;

(d) That a seller, buyer, landlord, or tenant will agree to financing terms other than those offered;

(e) Any facts or suspicions regarding circumstances which may psychologically impact or stigmatize any real property pursuant to section 38–35.5–101, C.R.S.; or

(f) Any material information about the other party unless disclosure is required by law or failure to disclose such information would constitute fraud or dishonest dealing. . . .

§ 12–61–807(2).

■ The statute does not address whether transaction-brokers have a duty

to inform one party that market forces have swung in their favor, and advise on ways to take advantage of that change. The scant case law on § 12–61–801 *et seq.* also fails to address the issue. I therefore must rely on the language of the statute, giving words and phrases their plain and ordinary meaning. *See Moody v. Corsentino,* 843 P.2d 1355, 1370 (Colo.1993); *People v. Guenther,* 740 P.2d 971, 975 (Colo. 1987). I also must give effect to the spirit and intent of the General Assembly in enacting the statute. *See Brock v. Nyland,* 955 P.2d 1037, 1040 (Colo.1998). A statutory interpretation that defeats the legislative intent or leads to an absurd result will not be followed. *See AviComm, Inc. v. Colorado Pub. Utils. Comm'n,* 955 P.2d 1023, 1031 (Colo.1998).

By its terms, the statute does not impose upon a transaction-broker a duty to keep track of land or water values once land is under contract, or a duty to inform a seller that his land or water is worth more than the asking price. Nor does it require that a transaction-broker advise a party that it is not in his best interest to accept a given offer. Such requirements are in conflict with the plain terms of the statute. The statute clearly states that the transaction-broker is not an agent for either party, *see* § 12–61–807(1), nor an *"advocate* for the interests of any party to [the] transaction." § 12–61–802(6) (emphasis added). It also specifically forbids the broker from disclosing certain information that would give either side a negotiation advantage. Consequently, the broker may not disclose that a buyer is willing to accept less than stated, that a seller is willing to pay more than offered, motivating factors for the purchase or sale, or financing terms which a party might accept. *See id.* at (3)(a)-(f).

The Sussmans, in effect, argue that the statute requires the transaction-broker to

advantage sellers over buyers. Such a role would require the broker to track rising property values, inform the sellers of those values, and advocate sellers modify their strategy accordingly. Such a duty would effectively remove the transaction-broker from his role as intermediary, and put him in the position of advocate for the seller. By statute, such advocacy is reserved for the seller's agent, who is required "[t]o promote the interests of the seller or landlord with the utmost good faith, loyalty, and fidelity, including, but not limited to: (I) Seeking a price and terms which are acceptable to the seller or landlord ... [and] (IV) Counseling the seller or landlord as to any material benefits or risks of a transaction which are actually known by the broker ...." § 12–61–804(1)(c). By imposing this same duty on the transaction-broker, the Sussmans not only duplicate the duty of the seller's agent, but also undermine the stated purpose of the transaction-broker role. Such a construction is antithetical to the statute. I therefore conclude that Defendants had no duty to inform the Sussmans of the rising price of water or the advantages of refusing the contract modification. Because the Sussmans have failed to state a claim upon which relief can be granted, I dismiss their third claim for relief against Defendants Stoner and The Group.

## B. Fraud

■ Mr. Stoner next moves to dismiss the Sussmans sixth claim for relief, fraudulent concealment, on the grounds that he had no duty to disclose the value of the water. I agree. The elements of the tort of fraudulent concealment are: (1) the defendant's concealment of a material existing fact that in equity or good conscience should be disclosed; (2) the defendant's knowledge that the fact is being concealed; (3) the plaintiff's ignorance of the fact; (4) the defendant's intent that the plaintiff act on the concealed fact; and (5)

the plaintiff's action on the concealment resulting in damage. *See Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo.Ct.App.1991).

■ "To succeed on a claim for fraudulent concealment or non-disclosure, a plaintiff must show that the defendant had a duty to disclose material information." *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo.1998) (citation omitted). *See also* RESTATEMENT (SECOND) OF TORTS § 551(2); CJI 4th 19:2. "A defendant has a duty to disclose to a plaintiff with whom he or she deals material facts that 'in equity or good conscience' should be disclosed." *Mallon Oil*, 965 P.2d at 111 (citation omitted). To determine whether the circumstances of a particular case give rise to a duty to disclose in "equity or good conscience," *Mallon Oil* directs a court to the RESTATEMENT (SECOND) OF TORTS § 551(2) for guidance. *See id.* Section 551(2) sets forth situations in which such a duty exists:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, ...
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

The Sussmans have properly pled the above five elements of a fraudulent concealment claim. However, they have not pled that Mr. Stoner had a duty to disclose information to them. Although they deny that duty is an essential element of the claim, the Sussmans argue in their response brief that Mr. Stoner had a duty under § 551(2)(e). They assert that Mr.

Stoner was experienced in land deals, whereas they were unfamiliar with land and water values in the West. Because Mr. Stoner was a transaction-broker, they relied on his expertise and he had a duty to disclose the rising value of the Poudre water. I disagree. As outlined above, a transaction-broker has no duty to disclose that property priced by the seller has risen in value above the asking price. As the other provisions of § 551(2) do not apply, I find that Plaintiffs have failed to state a claim for fraudulent concealment upon which relief can be granted and dismiss that claim as to Defendant Stoner.

### C. Professional Negligence

■ Defendants next move to dismiss the Sussmans' seventh claim for relief, professional negligence, on the ground that Colo.Rev.Stat. § 12–61–801 does not create a duty requiring transaction-brokers to disclose the market value of land or water. I agree.

■ "Negligence claims are based on the premise that persons or entities have certain legislatively or judicially recognized duties toward others and are required to act reasonably to fulfill such duties." *Baumgarten v. Coppage*, 15 P.3d 304, 307 (Colo.Ct.App.2000) (citing *Martinez v. Badis*, 842 P.2d 245 (Colo.1992)). To prevail on a claim of professional negligence, a plaintiff must establish that the professional failed to conform to the standard of care ordinarily possessed and exercised by members of the same profession practiced by that defendant. Further, unless the alleged negligence concerns subject matter within the common knowledge or experience of an ordinary person, both the standard of care and the defendant's failure to adhere to that standard must be established by the expert opinion testimony of a qualified expert witness. *See Melville v. Southward*, 791 P.2d 383 (Colo.

1990); *Teiken v. Reynolds*, 904 P.2d 1387 (Colo.Ct.App.1995).

Here, the Sussmans' claim is predicated on allegations that Mr. Stoner, "as [a] licensed professional[ ], breached certain legislatively imposed duties or standards applicable to [his] professional responsibilities and business dealings." *Baumgarten*, 15 P.3d at 307. The Sussmans allege that Mr. Stoner had "a duty to perform [his] professional obligations to the Plaintiff in a competent manner," Complaint at ¶ 105, yet he "performed [his] professional duties in a negligent manner." *Id.* at ¶ 106. The Sussmans cite no source for this duty beyond Colo.Rev.Stat. § 12–61–801 *et seq.* However, as stated in Part IIA, *supra*, Mr. Stoner had no duty to inform the Sussmans of the change in market conditions or the effect of that change on the contract modification. Because there is no legislatively imposed duty, there can be no breach. Thus, Mr. Stoner is not liable for the acts alleged in the Sussmans' seventh claim. Consequently, The Group cannot be liable for his acts on the basis of *respondeat superior.* I therefore conclude that the Sussmans have failed to state a claim for professional negligence upon which relief can be granted, and dismiss that claim as to Mr. Stoner and The Group.

Accordingly, IT IS ORDERED that:

1. Defendants' motion to dismiss, or in the alternative, motion for a more definite statement is GRANTED;

2. Plaintiffs' third claim for relief for breach of the statutory duties of brokers/ negligence *per se* against Defendants Stoner and The Group is DISMISSED;

3. Plaintiffs' sixth claim for relief for fraudulent concealment against Defendant Stoner is DISMISSED;

4. Plaintiffs' seventh claim for relief for professional negligence against Defen-

dants Stoner and The Group is DIS-MISSED; and

5. Defendants Stoner and The Group are awarded their costs.