IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2023-NMCA-021

Filing Date: December 19, 2022

No. A-1-CA-39214

LM INSURANCE CORPORATION, a
foreign corporation; DENNIS HEAVNER,
an individual; and BETH HEAVNER, an
individual,

      Plaintiffs-Appellees,

v.

I DO ALBUQUERQUE d/b/a KELLER
WILLIAMS ALBUQUERQUE, a foreign
limited partnership; CLAY TRAFTON,
an individual; and JOHN DOE
CORPORATION,

      Defendants-Appellants.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nancy J. Franchini, District Judge

Stalter Law LLC
Kenneth H. Stalter
Albuquerque, NM

Marrs Griebel Law, Ltd.
Patrick Griebel
Albuquerque, NM

for Appellees Dennis and Beth Heavner

Cozen O'Connor
John K. Daly
Benjamin J. Migliorino
Denver, CO

for Appellee LM Insurance Corporation

Law Offices of Linnsey M. Amores

Kristin L. Groman
Linnsey M. Amores
Scottsdale, AZ

for Appellants

**OPINION**

**BOGARDUS, Judge.**

**{1}** Defendants I Do Albuquerque d/b/a Keller Williams Albuquerque (Keller Williams) and Clay Trafton appeal the district court's judgment in favor of Plaintiffs LM Insurance Corporation, Dennis Heavner, and Beth Heavner (collectively, Plaintiffs), concluding that Defendants breached statutory duties of care and awarding damages as well as attorney fees and prejudgment interest. Defendants argue (1) the district court erred in finding that Defendants owed a duty to confirm the licensing status of the contractors Defendants recommend; (2) there was no evidence of causation between Defendants' failure to confirm the licensing status of the contractor and the fire; (3) the district court erred in awarding attorney fees based on the listing agreement; and (4) the district court improperly considered confidential settlement offers made during mediation as the basis to award prejudgment interest. We affirm.

**BACKGROUND**

**{2}** Defendant Trafton, employed by Keller Williams, signed a listing agreement (the Listing Agreement) with Plaintiffs Dennis and Beth Heavner (collectively, the Heavners) to be their transaction broker for the sale of their home, insured by Plaintiff LM Insurance. The Heavners entered into a contract for the sale of the home, but a home inspection revealed problems with portions of the roof. After Dennis Heavner was unable to find a roofer available to address the problems, Trafton volunteered to "take care of it." Trafton did his own search for a roofer and vouched for Ramon Perez, without confirming whether he was licensed or insured as a roofer. Mr. Perez performed the work negligently, causing a fire that destroyed the home. Plaintiffs filed a complaint for damages against Defendants that included claims for breach of contract and negligence.

**{3}** After a bench trial, the district court concluded that Defendants owed statutory duties independent of the Listing Agreement regarding the recommendation and procurement of Mr. Perez, found Defendants 45 percent at fault, and awarded damages, as well as attorney fees plus prejudgment interest to Plaintiffs. Defendants appeal.

**DISCUSSION**

**{4}** On appeal, Defendants take issue with a number of the district court's legal conclusions as well as the lack of factual evidence supporting the district court's

conclusion regarding causation. The district court's legal conclusions must each be supported by one or more findings of fact. *McDonald v. Zimmer Inc.*, 2020-NMCA-020, ¶ 23, 461 P.3d 930. We review the district court's factual findings for substantial evidence and its application of law to the facts de novo. *Id.*

**I.      The District Court Did Not Err in Concluding That Defendants Owed a Duty of Care to Disclose the Licensing Status of Mr. Perez**

**{5}**     Defendants argue that they did not owe Plaintiffs a duty of care to investigate whether Mr. Perez was properly licensed because Defendants did not enter into an agency relationship with Plaintiffs, and because the Listing Agreement placed the duty to investigate contractors solely on Plaintiffs. We disagree.

**{6}**     "[T]he existence of a duty is a question of law, which we review de novo." *Salas v. Mountain States Mut. Cas. Co.*, 2009-NMSC-005, ¶ 12, 145 N.M. 542, 202 P.3d 801. We must consider New Mexico's legal precedent, statutes, or other principles of law to determine whether transaction brokers—who are not agents and owe no fiduciary duty—separately owe a duty of reasonable care regarding the licensing status of contractors they recommend. *See Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 43, 133 N.M. 669, 68 P.3d 909 ("The existence of a duty . . . is answered by reference to legal precedent, statutes, and other principles comprising the law."). Thus, expert testimony purporting to address the professional standard of care must account for statutes, regulations, and/or court rules that apply to the conduct of transaction brokers. *See Oakey v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 27, 399 P.3d 939 (stating that a professional's common law duty to meet the standard of care must be measured against statutes, regulations, or ethical rules that apply to a professional's conduct).

**{7}**     Transaction brokers provide real estate services without entering into an agency or fiduciary relationship. *See* NMSA 1978, § 61-29-2(A)(16) (2014, amended 2021); 16.61.19.9(A) NMAC ("The transaction broker relationship is a non-fiduciary relationship."). Even without the existence of an agency relationship, however, transaction brokers are licensees who must perform all duties established by the New Mexico Real Estate Commission (the Commission). NMSA 1978, § 61-29-10.2(B) (2005). The Commission established reasonable care as a duty for transaction brokers, defined as "conduct that a reasonable person would understand to meet standards of professionalism and ethical conduct within a profession, including but not limited to good faith, competence, trustworthiness, diligence, and lawful behavior." 16.61.1.7(EE) NMAC (defining "reasonable care");[1] 16.61.19.8(A)(1) NMAC (establishing reasonable care as a broker duty); 16.61.19.9(A) NMAC (explaining that a transaction broker is a type of broker). To meet this standard of reasonable care, Defendants must "apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances." *Oakey*, 2017-NMCA-054, ¶ 25 (internal quotation marks and citation omitted). "The professional standard of care generally must be established by expert testimony." *Id.*

---

1 The Listing Agreement specifically incorporated the Commission Rules as part of the agreement.

**{8}** Defendants and Plaintiffs each presented an expert witness. Defendants' expert witness testified that there is no statute, code, regulation, or standard that requires New Mexico transaction brokers to research the license or insurance status of a potential vendor. Plaintiffs' expert witness testified to the contrary, explaining that recommending qualified people who are licensed and insured is a universal standard in the real estate business. Plaintiffs' expert additionally testified that the standard of care in the industry was for a broker who has no information about whether a vendor is licensed to disclose that lack of knowledge and to disclose adverse information. Furthermore, a company representative for Keller Williams testified that the company had an expectation to only recommend vendors who were licensed and insured. After considering both lay and expert testimony, the district court found that Trafton breached his professional duty of care in his recommendation and procurement of Mr. Perez. New Mexico law imposes a duty of reasonable care on transaction brokers, and the district court relied on expert and lay testimony to determine that this duty includes disclosing the licensing status for recommended contractors. We defer to the fact-finder on this determination. *See Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, ¶ 37, 301 P.3d 387 ("When there is a conflict in the testimony, we defer to the trier of fact." (alteration, internal quotation marks, and citation omitted)).

**{9}** Defendants first contend that "by requiring the transaction broker to investigate and evaluate suggested vendors, the [district c]ourt's ruling circumvents [the L]egislature and the New Mexico Real Estate Commission Rules by turning every transaction broker into a fiduciary." We disagree. Defendants fail to provide New Mexico authority supporting this contention. Instead, Defendants rely on a federal district court case for the general proposition that the duties owed as a transaction broker are those set forth in statute or regulation. In *Sussman v. Stoner*, the district court for the District of Colorado held that Colorado law did not establish a duty for a transaction broker to inform the seller of the rising value of their property or the advantages of refusing a particular offer. 143 F. Supp. 2d 1232, 1238-39 (D. Colo. 2001). The governing "statute clearly state[d] that the transaction-broker is not an agent for either party" or "an advocate for the interests of any party." *Id.* at 1238 (emphasis, internal quotation marks, and citation omitted). The court therefore reasoned that such a duty would "effectively remove the transaction-broker from his role as intermediary, and put him in the position of advocate for the seller." *Id.* at 1239.

**{10}** Here, the district court applied the duty of reasonable care established by the Commission's Rules, which does not affect the transaction broker's role as an intermediary. The duty to confirm licensing in this case does not provide an advantage to one party over the other in a real estate transaction, as was the case in *Sussman*. *See id.* Rather, this duty is beneficial to both parties by encouraging the reliance on licensed contractors who will not, presumably, cause damage to the property. The purpose of removing fiduciary duties and agency status from transaction brokers is not to eliminate standards of reasonable care, but rather to avoid conflicts of interest that arise when a broker is an agent for both parties to the transaction. *See* 16.61.19.8(A)(1) NMAC (establishing a duty of reasonable care on transaction brokers); *see also* 16.61.19.8(B)(7) NMAC (prohibiting the broker from disclosing certain information that

would give either side a negotiation advantage). The lack of an agency relationship does not alter the duty of reasonable care for transaction brokers, and the district court did not err by finding that transaction brokers have a duty of care to disclose the licensing status of contractors they recommend.

**{11}** Defendants next contend that the Listing Agreement identified Plaintiffs as the sole party with the duty to investigate and evaluate vendors. We disagree that the Listing Agreement's language supports this contention. The Listing Agreement states that if a transaction broker "recommends a . . . contractor . . . to [Plaintiffs] for any purpose, such recommendation shall be independently investigated and evaluated by [Plaintiffs.]" The Listing Agreement clearly creates an obligation for *Plaintiffs* to independently investigate and evaluate a contractor Defendants recommend, a contractual duty accounted for by the district court's determination that Plaintiffs bore 5 percent of the fault. The Listing Agreement, however, is silent as to Defendants' duties when recommending contractors; it does not limit Defendants' duty of reasonable care, nor does it change Defendants' duty to disclose the licensing of recommended contractors. Concluding that the Listing Agreement relieves Defendants of their reasonable care duty established by the Commission Rules would create a new agreement for the parties, which we cannot do. *See Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960 (noting that "absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and cannot create a new agreement for the parties" (internal quotation marks and citation omitted)). We find no error, therefore, in the district court's ruling on this issue.

## II.     The District Court Did Not Err in Finding Causation

**{12}** Defendants next argue "[t]here was no evidence at trial that connected the alleged lack of insurance and licensing to the negligence." However, Defendants failed to set forth a specific attack on any finding of facts and failed to challenge any specific evidence the district court relied on for its conclusion on causation. *See Lopez v. N.M. Dep't of Tax'n & Revenue*, 1997-NMCA-115, ¶ 5, 124 N.M. 270, 949 P.2d 284 ("Unchallenged findings of fact are binding on appeal."); *see also Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). We therefore rely on the district court's factual findings and disagree with Defendants' argument that the element of causation was not supported by the evidence.

**{13}** "An act or omission may be deemed a 'proximate cause' of an injury if it contributes to bringing about the injury, if the injury would not have occurred without it, and if it is reasonably connected as a significant link to the injury." *Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 34, 138 N.M. 189, 118 P.3d 194; *see* UJI 13-305 NMRA (defining causation). "Unless reasonable minds cannot differ, issues of negligence and causation are generally questions for the fact[-]finder." *Reichert v. Atler*, 1992-NMCA-134, ¶ 19, 117 N.M. 628, 875 P.2d 384, *aff'd*, 1994-NMSC-056, 117 N.M. 623, 875 P.2d 379.

**{14}**    The district court found, based on Defendants' expert's testimony, that "licensure to perform roofing work is a reasonable proxy for basic competence on the part of a vendor to perform work . . . safely." Defendants' expert also testified, and the district court found, that a vendor having insurance provides a remedy for property owners if the vendor causes harm to the property. The parties stipulated that instead Plaintiffs' insurer paid significant sums resulting from the fire caused by the contractor, and Plaintiffs testified that they additionally paid more than $60,000 out of pocket. Further, Plaintiffs testified that had they known that the contractor was not licensed or insured, they would not have hired him. This evidence was supported by the record and was sufficient for the district court, as the fact-finder, to reasonably conclude that the fire and Plaintiffs' damages were a natural and continuous result from Defendants' recommendation of an unqualified roofer. *See Cross v. City of Clovis*, 1988-NMSC-045, ¶ 18, 107 N.M. 251, 755 P.2d 589 ("A proximate cause requires only a result that proceeds in a natural and continuous sequence from the act or omission in question."). We will not substitute our judgment for that of the district court. *See Las Cruces Pro. Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (stating that "we will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder").

### III.    The District Court Did Not Err in Awarding Attorney Fees

**{15}**    Defendants contend that the language of the Listing Agreement does not include attorney fees for litigation based on Defendants' negligence. Again, we disagree with Defendants' argument.

**{16}**    "While a [district] court has broad discretion when awarding attorney fees, that discretion is limited by any applicable contract provision." *Fort Knox Self Storage, Inc. v. W. Techs., Inc.*, 2006-NMCA-096, ¶ 29, 140 N.M. 233, 142 P.3d 1. We, therefore, examine the language of the contract to determine the parties' intentions. *See id.* The meaning of a contract is an issue of law that we review de novo. *Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶ 21, 135 N.M. 607, 92 P.3d 53.

**{17}**    The Listing Agreement states, "Should any aspect of this Agreement result in arbitration or litigation, the prevailing party of such action, shall be entitled to an award of reasonable attorney[] fees and court costs." Therefore, the issue in this case is whether "any aspect of this Agreement" includes Defendants' negligence.

**{18}**    New Mexico courts interpreted similar contractual language in *Montoya v. Villa Linda Mall, Ltd.*, 1990-NMSC-053, ¶ 7, 110 N.M. 128, 793 P.2d 258 (interpreting "relating to the provisions of this lease, or any default hereunder" (internal quotation marks omitted)), and *Fort Knox Self Storage, Inc.*, 2006-NMCA-096, ¶ 28 (interpreting "in connection with this [a]greement" (internal quotation marks omitted)). In both cases, our courts interpreted the contract language to be "broad enough" to include tort claims. *Montoya*, 1990-NMSC-053, ¶ 8; *Fort Knox Self Storage, Inc.*, 2006-NMCA-096, ¶ 32. Similarly, we have previously found that the contractual language "any aspect of th[e listing] agreement" is broad enough to include tort claims, if the claims were brought "in

connection with the parties' agreement." *Varga v. Ferrell*, 2014-NMCA-005, ¶¶ 3, 15, 509 P.3d 610 (alteration, internal quotation marks, and citation omitted) (concluding that negligence and fraud claims can be "aspects" of a contractual agreement).

**{19}** The district court properly found that

> [b]ut for the Listing Agreement, there would not have been litigation between these parties. If there had not been [the L]sting agreement, Plaintiffs Heavner and Defendant Trafton would have no reason to work together to get the Soula home sold. If there had not been [the L]isting agreement, Defendant Trafton would have no reason to take the lead in searching for a contractor to complete the roofing work. This litigation was tied to, related to, and in connection with many aspects of the Listing Agreement.

Thus, the evidence supported a connection between the claims and "an aspect of" the Listing Agreement. As we have noted, one aspect of the Listing Agreement specifically incorporated the Commission rules, which included the duty of reasonable care that the district court determined Defendants breached. Just as in *Montoya*, this provision "sets forth the obligations and rights of the parties as they pertain to" an aspect of the contract. 1990-NMSC-053, ¶ 8. We agree with the district count's findings and conclude that Plaintiffs' negligence claims are related to the parties' Listing Agreement and resulted in litigation, as contemplated by the attorney fees provision. Thus, we find no error in the district court's award of attorney fees.

## IV. Defendants Failed to Preserve the Issue Regarding the District Court Using Confidential Mediation Information

**{20}** Finally, Defendants argue that the district court improperly considered confidential settlement offers made during mediation as the basis to award prejudgment interest. However, Defendants failed to preserve this issue in the district court, *see* Rule 12-321(A) NMRA (requiring that, for preservation, "it must appear that a ruling or decision by the [district] court was fairly invoked"), and even if the issue was preserved, Defendants fail to develop how Plaintiffs' disclosure of settlement offers in the context of a request for prejudgment interest falls within the scope of the Mediation Procedures Act, NMSA 1978, §§ 44-7B-1 to -6 (2007).

**{21}** Defendants did not raise the issue of confidentiality in their response to Plaintiffs' motion for prejudgment interest. Instead, Defendants restated the settlement offers in their response and conceded that the settlement offers described in Plaintiffs' motion were accurate. Defendants raised the issue of confidentiality only later in a request to seal Plaintiffs' motion for attorney fees, a request included as part of their response to Plaintiffs' motion. The district court, however, did not consider the request to seal because Defendants violated Rule 1-007.1(E) NMRA by failing to file the request to seal separately from their response to the motion for attorney fees. Defendants' failure to raise the issue in the district court is unsurprising, given that the district court must

consider the settlement offers that were exchanged in order to exercise its discretion to award prejudgment interest. *See* NMSA 1978, § 56-8-4(B)(2) (2004) (giving court discretion to award interest from the date the complaint is served upon consideration of, among other things, "a reasonable and timely offer of settlement" by the defendant).Thus, Defendants failed to preserve this issue, first by not timely raising it in response to Plaintiffs' motion for prejudgment interest, and again, by failing to comply with Rule 1-007.1(E) and filing a separate motion for the district court to consider. Thus, Defendants failed to make a timely and proper objection regarding this issue, and the district court did not have an opportunity to rule on it. *See Murken v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-080, ¶ 10, 140 N.M. 68, 139 P.3d 864 (requiring parties to "make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon" in order to preserve an issue for appeal (internal quotation marks and citation omitted)). "Issues not properly raised in the [district] court and on which a ruling by the [district] court was not properly invoked will not be considered on appeal." *In re Last Will & Testament of Skarda*, 1975-NMSC-031, ¶ 30, 88 N.M. 130, 537 P.2d 1392.

**{22}**     Even if the issue was preserved, Defendants fail to develop an argument to explain how their settlement offer falls within the scope of the Mediation Procedures Act. Under the Mediation Procedures Act, only "mediation communications" are confidential. *See* § 44-7B-4. "[M]ediation communication" is defined as "a statement, whether oral or in a record or verbal or nonverbal, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing or reconvening a mediation or retaining a mediator." Section 44-7B-2(B). Defendants cite no evidence for their contention that their settlement offer in response to the mediator's number was a "mediation communication." Defendants point to no signed mediation agreement nor to an order requiring the parties to mediate. *See* § 44-7B-3(A) (stating that the Mediation Procedures Act applies to mediations required by "statute or court or administrative agency rule," or by party agreement evidenced by a signed mediation agreement). Although the district court found that Defendants' settlement offer was "apparently in response to a mediator's number of $164,000," Defendants do not explain how this finding alone would establish that the settlement offer was confidential pursuant to the Mediation Procedures Act. Defendants' argument on this issue is completely undeveloped, and we will not consider it further. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. We therefore find no error in the district court's award of prejudgment interest.

**CONCLUSION**

**{23}**     For the foregoing reasons, we affirm.

**{24}     IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**KATHERINE A. WRAY, Judge**