142 P.3d 1 (2006)
2006-NMCA-096
FORT KNOX SELF STORAGE, INC., Plaintiff-Appellee,
v.
WESTERN TECHNOLOGIES, INC., Defendant-Appellant.
No. 25,173.
Court of Appeals of New Mexico.
January 26, 2006.
As Corrected August 29, 2006.
*3 Yenson, Lynn, Allen & Wosick, P.C. Matthew A. Pullen April D. White Albuquerque, NM, for Appellee.
Cuddy, Kennedy, Albetta & Ives, L.L.P. Keith S. Burn Samantha J. Fenrow Santa Fe, NM, for Appellant.

OPINION
FRY, Judge.
{1} Defendant Western Technologies, Inc. appeals an order awarding Plaintiff Fort Knox Self Storage, Inc. over $110,000 in damages for negligence, over $240,000 in attorney fees, and prejudgment interest. The contract between the parties, in which Western was to provide geotechnical engineering services in evaluating the subsurface conditions of a proposed building site, contained a limitation of liability clause purportedly limiting Western's liability to $50,000. The trial court refused to enforce this clause on the ground that it violated a statute prohibiting any party to a construction contract from agreeing to indemnify any entity for its own negligence. While this is the primary issue on appeal, Western also challenges the award of attorney fees and prejudgment interest.
{2} We reverse the trial court's determination that the limitation of liability clause was void and remand for entry of an order limiting the damages awarded against Western to $50,000. We affirm the award of attorney fees and prejudgment interest.

BACKGROUND
{3} Fort Knox entered into a contract with Western by which Western agreed to provide geotechnical services in connection with the site where Fort Knox intended to build a self-storage facility. Fort Knox agreed to pay Western $1,750 plus tax for its services. Western performed the agreed services, and, shortly after construction of the facility was completed, Fort Knox employees noticed damage to walls and cracks and fissures in the parking lot. Fort Knox sued, claiming that this damage resulted from the negligence of Western and other parties involved in the construction, or from breach of contract.
{4} During the course of the litigation, Western contended that a provision in its contract with Fort Knox limited its liability, if any, to $50,000. The contract provision stated:
LIMITATION ON [WESTERN'S] LIABILITY
NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, [WESTERN'S] TOTAL AGGREGATE LIABILITY IN CONNECTION WITH THIS AGREEMENT AND WORK PERFORMED HEREUNDER SHALL BE STRICTLY LIMITED TO AN AMOUNT EQUAL TO THE GREATER OF $50,000 OR THE TOTAL CONTRACT PRICE PAID TO [WESTERN] UNDER THIS AGREEMENT (LESS DIRECT THIRD-PARTY COSTS), WHETHER SUCH LIABILITY IS ASSERTED FOR BREACH OF REPRESENTATION OR WARRANTY, UNDER ANY INDEMNITY, IN ANY OTHER RESPECT UNDER OR FOR BREACH OF CONTRACT, OR AS A LIABILITY ARISING IN TORT OR BY STATUTE. CLIENT HEREBY WAIVES AND DISCHARGES ALL PRESENT AND FUTURE CLAIMS AGAINST [WESTERN] AND (FOR ACTIONS IN SUCH CAPACITY) ITS *4 SHAREHOLDERS, DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, AND SUBCONTRACTORS, FOR ANY CLAIM OTHER THAN THOSE DESCRIBED IN THE PRECEDING SENTENCE OR ANY LIABILITY AMOUNT IN EXCESS OF THE AGGREGATE LIMITATION STATED IN THE PRECEDING SENTENCE.
{5} Western sought to enforce this limitation of liability provision through a motion for partial summary judgment, arguing that if it were liable to Fort Knox at all, its liability should be limited to $50,000. Fort Knox responded by arguing that the provision was unenforceable because it violated a New Mexico statute, NMSA 1978, § 56-7-1 (1971), which, in the version applicable to the present case, prohibited parties to construction contracts from agreeing to indemnify any entity for its own negligence. That statute, which we will call the "anti-indemnification statute," provided in pertinent part:
Any provision, contained in any agreement relating to the construction, installation, alteration, modification, repair, maintenance, servicing, demolition, excavation, drilling, reworking, grading, paving, clearing, site preparation or development, of any real property, or any improvement of any kind[,] ... by which any party to the agreement agrees to indemnify the indemnitee, or the agents and employees of the indemnitee, against liability, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to persons or damage to property caused by, or resulting from, in whole or in part, the negligence, act or omission of the indemnitee, or the agents or employees of the indemnitee, or any legal entity for whose negligence, acts or omissions any of them may be liable, is against public policy and is void and unenforceable[.]
§ 56-7-1.
{6} The trial court, persuaded by Fort Knox's argument, denied Western's motion for partial summary judgment on the ground that the contract's limitation of liability provision was "unenforceable because it violates the New Mexico [a]nti-[i]ndemnification [statute]." In so ruling, the trial court reasoned that "[Fort Knox] ends up indemnifying [Western] if the losses are more than [$]50,000, because they don't get to collect them from [Western]."
{7} Minus Western's limitation of liability defense, the case proceeded to trial against Western on theories of breach of contract and negligence. While the jury concluded that Western had not breached its contract with Fort Knox, it found that Western was negligent and that its negligence caused damages to Fort Knox. The jury assessed Fort Knox's damages at $1,107,466 and attributed ten percent of the responsibility for those damages to Western, thirty percent to Fort Knox, and the remaining sixty percent to a non-party engineering firm. In accordance with a provision in the contract between Western and Fort Knox, the trial court awarded Fort Knox its attorney fees and further ordered Western to pay Fort Knox prejudgment interest.

DISCUSSION
{8} We address five arguments made by the parties on appeal. Because we reverse the trial court's decision voiding the limitation of liability clause, we address Fort Knox's arguments in support of the trial court's decision. Because we affirm the trial court's awards of attorney fees and prejudgment interest, we consider Western's arguments for reversal of these awards.
{9} We summarize the parties' arguments, designating each argument with the numeral or letter that we utilize in discussing the arguments in this opinion. In arguing to affirm the trial court, Fort Knox argues that (I) the trial court correctly found the limitation of liability clause to be unenforceable because it violated the anti-indemnification statute. It also argues that, (II) even if the anti-indemnification statute is inapplicable, the limitation of liability clause is unenforceable for two reasons: (A) it violates public policy, and (B) it is a liquidated damages clause that does not comply with the requirements of such a clause. In arguing to reverse, Western argues (III) that the attorney fee award was erroneous because (A) contrary to the contract's attorney fees clause, the litigation was not "in connection with" the agreement, (B) Fort Knox was not the *5 prevailing party, and (C) the amount of fees awarded was unreasonable. Western also argues (IV) that Fort Knox's unreasonable delay in the case precluded an award of prejudgment interest. We address each argument in turn.

I. THE LIMITATION OF LIABILITY CLAUSE DOES NOT VIOLATE THE ANTI-INDEMNIFICATION STATUTE
{10} Our standard of appellate review is de novo because this issue concerns the interpretation of both a contract and a statute. See Bd. of Comm'rs of Rio Arriba County. v. Greacen, 2000-NMSC-016, ¶ 4, 129 N.M. 177, 3 P.3d 672; Peck v. Title USA Ins. Corp., 108 N.M. 30, 33, 766 P.2d 290, 293 (1988).
{11} Fort Knox asserts that the limitation of liability clause is unenforceable because Section 56-7-1 expressly dictates that one cannot seek to avoid responsibility for one's own negligence during the course of construction. It argues that our New Mexico Supreme Court has recognized that the provisions of this statute are broader than those in most states and prohibits agreements that attempt to indemnify in whole or in part against negligent liability. See Sierra v. Garcia, 106 N.M. 573, 575, 746 P.2d 1105, 1107 (1987). While we agree with Fort Knox's assessment of the holding in Sierra, we do not agree that Section 56-7-1, as interpreted by Sierra, applies in this case.
{12} We do not read Section 56-7-1 as prohibiting a limitation of liability based on one's own negligence but as prohibiting the avoidance of all liability for one's own negligence. See Sierra, 106 N.M. at 576, 746 P.2d at 1108 (explaining that Section 56-7-1 provides "that liability arising in whole or in part from an indemnitee's negligence . . . may not be contracted away by an indemnity agreement"). The limitation of liability clause in this case does not seek to contract away all liability for Western's negligence but seeks to limit the amount of damages Western must pay for its own negligence. The contract does not indemnify Western against its own negligence. Indeed, it provides that Western may be liable for damages, based on its own negligence, that are twenty-eight times higher than the amount of the contract.
{13} Our view is supported by Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195 (3rd Cir.1995), which involved strikingly similar facts. The contract in Valhal contained a limitation of liability clause stating:
The OWNER agrees to limit the Design Professional's liability to the OWNER and to all construction Contractors and Subcontractors on the project, due to the Design Professional's professional negligent acts, errors or omissions, such that the total aggregate liability of each Design Professional shall not exceed $50,000 or the Design Professional's total fee for services rendered on this project.
Should the OWNER find the above terms unacceptable, an equitable surcharge to absorb the Architect's increase in insurance premiums will be negotiated.
Id. at 198 (internal quotation marks omitted). The lower court determined that this provision violated the public policy behind Pennsylvania's anti-indemnification statute. Id. at 199 n. 2.
{14} The appellate court reversed, treating the provision as a limitation of liability clause, and rejected the contention that it was unenforceable under Pennsylvania law. The court first distinguished a limitation of liability clause from two other methods of limiting exposure to damages for the negligent performance of a contract. Id. at 202. One method is an exculpatory clause, which immunizes a person from the consequences of his or her own negligence. Id. Another method is an indemnity clause, which holds the indemnitee harmless by requiring the indemnitor to bear the cost of damages for which the indemnitee may be liable. Id. The court then concluded that the clause at issue bore no relation to either of these two methods. The clause did not bar any cause of action or require someone other than the beneficiary of the clause to pay for any loss caused by the beneficiary's negligence. Id. The court held that the beneficiary remained liable for its own negligence and was exposed to liability up to a maximum of $50,000. Id. The court stated, "Thus, the amount of liability is capped, but [the beneficiary] still bears *6 substantial responsibility for its actions." Id.; cf. Berlangieri v. Running Elk Corp., 2003-NMSC-024, ¶ 1, 134 N.M. 341, 76 P.3d 1098 (holding that an exculpatory release was unenforceable as contrary to public policy).
{15} We recognize, as did the court in Valhal, the similarities between exculpatory clauses, indemnity clauses, and limitation of liability clauses. Valhal, 44 F.3d at 202. But we also recognize, as did the court in Valhal, that there is a significant difference between contracts that insulate a party from any and all liability and those that simply limit liability. Id. The Valhal court noted that clauses limiting liability "are a fact of everyday business and commercial life" and that such clauses are enforceable as long as they are "reasonable and not so drastic as to remove the incentive to perform with due care." Id. at 204. Because the contract exposed the architectural firm in Valhal to damages that were seven times the amount of remuneration it would receive under the contract, the court determined that the $50,000 cap did not immunize it from the consequences of its own actions but was a reasonable allocation of risk. Id.
{16} Fort Knox argues that the large difference between its total damages (over $1,000,000) and the contract limitation ($50,000) violates public policy. Fort Knox also appears to argue that Western is "immunized" in the manner of an indemnity clause for any damages over $50,000. We are not persuaded, however, that the correct measure of whether a cap is so small as to render the clause unenforceable is the difference between the damages suffered and the cap. The court in Valhal was equally unpersuaded by this argument. Although the court recognized that the $50,000 cap could be considered nominal when compared to the more than $2,000,000 in damages being sought, the court rejected this measure of reasonableness. Id. at 204. The court stated that the relevant inquiry must be whether the cap is so minimal compared to the expected compensation as to negate or drastically minimize concern for liability for one's actions. Id. In this case, the cap of $50,000 is twenty-eight times the amount of remuneration Western received under the contract, which was $1,750 plus tax. Similar to the court's determination in Valhal, where the cap was only seven times the expected fee, id., we conclude the cap in this case leaves Western exposed to substantial damages and does not negate Western's liability.
{17} Fort Knox seeks to distinguish Valhal on the ground that the contract in that case provided the option of an equitable surcharge to absorb the increase in insurance premiums if the limitation of liability was not accepted. We are not persuaded because Fort Knox does not explain why this additional provision should make a difference in analyzing the two cases. In our view, the equitable surcharge provision simply afforded the contracting parties an additional term for negotiating a limitation on the architecture firm's liability.
{18} Fort Knox further attempts to distinguish Valhal by arguing that Pennsylvania's anti-indemnification statute is materially different from New Mexico's, which our Supreme Court has recognized is more expansive than similar statutes in other states. We do not agree. Both the Pennsylvania and New Mexico statutes deal with provisions to indemnify or hold harmless. See id. at 204; § 56-7-1. Neither statute addresses a partial limitation of liability or cap on damages. See Valhal, 44 F.3d at 204; § 56-7-1. As discussed above, limitation of liability clauses differ significantly from hold harmless and indemnity clauses. We conclude that the statutes are similar in all material respects and find the interpretation of the Pennsylvania statute useful in determining the applicability of New Mexico's statute to the contract provision in this case.
{19} In a final attempt to distinguish Valhal, Fort Knox contends that the court in that case "clearly counsels against the enforcement of a limitation o[f] liability clause when property damage is involved." It is true that the court stated, "Limitation of liability clauses are routinely enforced under the Uniform Commercial Code when contained in sales contracts negotiated between sophisticated parties and when no personal injury or property damage is involved." 44 F.3d at 203. But, for two reasons, we are *7 not persuaded that this statement has the meaning attributed to it by Fort Knox.
{20} We first note that this statement does not preclude enforcement of limitation of liability clauses when personal injury or property damage is involved; instead, it states only that these clauses are routinely enforced when such damages are not involved. Second, the authorities cited by the Valhal court in support of its statement convince us that the court did not intend to prohibit the enforcement of limitation of liability clauses in the circumstances presented by this case.
{21} The Valhal court cited a Pennsylvania statute and three cases in support of its statement, and each authority supports enforcement of the limitation of liability clause in the present case. See id. The statute provides for a presumption of unconscionability where there is an attempt to limit "`consequential damages for injury to the person in the case of consumer goods'" but not "`where the loss i[s] commercial.'" Id. (quoting 13 Pa. Cons.Stat. Ann. § 2719(c) (Purdons 1984)). The court also cited New York State Electric & Gas Corp. v. Westinghouse Electric Corp., 387 Pa.Super. 537, 564 A.2d 919, 924 (1989) for the proposition that clauses excluding liability for special, indirect, and consequential damages are generally valid and enforceable. Valhal, 44 F.3d at 203. In addition, the court noted that limitation of liability clauses are routinely upheld in sales contracts and cited two cases where damages arose out of loss to personal property. See id.; LoBianco v. Prop. Prot., Inc., 292 Pa.Super. 346, 437 A.2d 417, 418, 421 (1981) (enforcing a clause limiting the liability of a security alarm company to the repair or replacement of security alarm equipment despite loss of over $35,000 in jewelry, rejecting arguments that the clause was unenforceable); Wedner v. Fid. Sec. Sys., 228 Pa.Super. 67, 307 A.2d 429, 430 (1973) (per curiam) (enforcing the limitation of liability to one year's service contract fee despite loss of over $46,000 in furs); cf. Keystone Aeronautics Corp. v. R.J. Enstrom Corp., 499 F.2d 146, 150 (3rd Cir.1974) (interpreting an exculpatory clause disclaiming all liability in sale of used helicopters).
{22} Based on these authorities, we conclude that the fact that the loss in this case arose out of consequential damages to commercial real property should not preclude enforcement of the limitation of liability clause, and Valhal does not support a different rule. The damages in Valhal arose out of a loss in property value arising from the architect's negligent failure to inform the property's buyer of a height restriction that would be violated by the architect's building design. Both Valhal and this case involve damages from losses to commercial buildings. It is reasonable that the results in these cases should be the same.
{23} By this decision, we do not mean to suggest that the same result would obtain if the beneficiary of a similar clause sought to enforce the clause against a consumer rather than a commercial entity like Fort Knox. See, e.g., Guthmann v. La Vida Llena, 103 N.M. 506, 510, 709 P.2d 675, 679 (1985) (describing the relative sophistication of the parties as one factor in evaluating unconscionability).

II. RESPONSE TO FORT KNOX'S ALTERNATIVE ARGUMENTS FOR AFFIRMANCE

A. The Clause Does Not Violate Public Policy
{24} Fort Knox argues that enforcement of the limitation of liability clause would violate public policy because it would undermine our system of pure comparative fault and override the jury's verdict. We do not agree. Consistent with comparative fault principles, the jury in this case apportioned fault among Fort Knox, Western, and a third party. This apportionment of liability remains unaffected by the contract's cap on the amount of damages, just as limiting the amount of damages Western may be required to pay does not immunize Western against its own negligence.

B. The Clause Is Not an Unenforceable Liquidated Damages Clause
{25} Fort Knox contends the limitation of liability clause is in fact a liquidated damages clause that is unenforceable because it fails to meet the requirements of a liquidated *8 damages clause. Specifically, Fort Knox maintains (1) that the clause's cap is so disproportionate to Fort Knox's actual damages that the clause shows oppression, and (2) that the clause fails to fix recovery at a specific amount because it provides alternative caps on Western's liability (i.e., either $50,000 or the contract price less third party expenses). See Gruschus v. C.R. Davis Contracting Co., 75 N.M. 649, 655, 409 P.2d 500, 504 (1965) (explaining that a liquidated damages clause fixes recovery for damages and will be unenforceable "when the stipulated amount is so extravagant or disproportionate as to show fraud, mistake or oppression"). These arguments have no merit.
{26} With respect to Fort Knox's broad argument that the clause is a liquidated damages provision, we do not agree. A liquidated damages clause "applies when the parties to a contract have agreed in advance on the measure of damages to be assessed in the event of default." A Dictionary of Modern Legal Usage 530 (2d ed.1995). The clause at issue does not fit within this definition because it pertains to actions resulting in damages, not default, and it limits the damages rather than provides an agreed upon measure of damages. See Wedner, 307 A.2d at 431 (holding that a clause limiting liability for damages was not a liquidated damages clause despite the fact that it stated the sum would be paid and received as liquidated damages).
{27} Even if the clause were deemed a liquidated damages clause, we are not persuaded by Fort Knox's sub-arguments. With respect to its first sub-argument  that the disproportionality between actual damages and the clause's cap reflects oppression  Gruschus makes it clear that the standard for disproportionality "is not furnished by [the] plaintiff's actual loss or injury, but by the loss or injury which might reasonably have been anticipated at the time the contract was made." 75 N.M. at 655, 409 P.2d at 504. There is no evidence that Western could have reasonably anticipated the amount of Fort Knox's actual damages at the time the contract was made. As to Fort Knox's second sub-argument  that the clause's alternative cap amounts violate the rule requiring fixed liquidated damages  Fort Knox's own argument decides this issue against it. A clause that fails to fix damages is not a liquidated damages clause.

III. ATTORNEY FEES
{28} The trial court ordered Western to pay Fort Knox for its attorney fees in reliance on the agreement between the parties, which provided:
In the event of litigation, arbitration or any other legal proceeding between [Fort Knox] and [Western] in connection with this Agreement, the non-prevailing party shall reimburse the prevailing party for all reasonable costs (including, without limitation, reasonable attorneys' fees and costs) incurred by the prevailing party.
Western argues that the trial court erred in awarding Fort Knox its attorney fees because (A) the jury's award to Fort Knox was not "in connection" with the agreement, and (B) Fort Knox was not the prevailing party. In the alternative, Western argues that (C) the amount of attorney fees awarded was exorbitant and unreasonable. After stating the applicable standard of review, we address each argument in turn.
{29} While a trial court has broad discretion when awarding attorney fees, that discretion is limited by any applicable contract provision. Hedicke v. Gunville, 2003-NMCA-032, ¶ 23, 133 N.M. 335, 62 P.3d 1217. Consequently, this Court looks to the contract language to determine the parties' intentions. Id. ¶ 24. The meaning of a contract is an issue of law that we review de novo. Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc., 2004-NMCA-063, ¶ 21, 135 N.M. 607, 92 P.3d 53.

A. The Litigation Was in Connection With the Agreement
{30} Western contends that, because the jury found that Western did not breach the agreement and because the jury's actual award was based on Western's negligence, Fort Knox's claim did not arise in connection with the agreement. We are not persuaded.
{31} Our Supreme Court rejected a similar argument in Montoya v. Villa Linda Mall, Ltd., 110 N.M. 128, 793 P.2d 258 (1990), *9 which involved commercial tenants who successfully sued their landlord for negligent misrepresentation and constructive fraud. The lease provided that if either the landlord or the tenant "institute[d] any action or proceeding against the other relating to the provisions of this lease, or any default hereunder," the non-prevailing party agreed "to reimburse the successful party for the reasonable expenses of attorney's fees" incurred. Id. at 129, 793 P.2d at 259. The landlord argued that the tenants could not recover their attorney fees because the lease's attorney fees clause precluded such recovery in connection with tort claims like those brought by the tenants. Id. The Court held that the language of the attorney fees clause was "broad enough to encompass suit based on tort claims that relate[d] to the contract in a direct way." Id. Because the tenants' tort claims "related directly to the space leased," the tenants could recover their attorney fees. Id.; see also Lerner v. Ward, 13 Cal.App.4th 155, 16 Cal.Rptr.2d 486, 487, 489 (1993) (holding that prevailing party's claim for misrepresentation of the characteristics of real property arose out of the purchase agreement for purposes of the agreement's attorney fees clause).
{32} Similarly, the language of the agreement in the present case is broad enough to include Fort Knox's claim of negligence against Western. It makes no difference that the jury found no breach of contract because the agreement does not limit recovery of attorney fees to claims for breach; instead, the agreement permits recovery if litigation is brought "in connection" with the agreement. Fort Knox's negligence claim was brought in connection with its agreement with Western because the claim came about as a result of Western's alleged failure to perform the work it was hired to do under the agreement.

B. Fort Knox Was the Prevailing Party
{33} Western contends Fort Knox was not the prevailing party within the meaning of the agreement's attorney fees clause because Western prevailed on Fort Knox's breach of contract claim and because the jury found Fort Knox to be three times as negligent as Western. We do not agree.
{34} Under New Mexico law, "at the end of the entire action, the prevailing party is the party who wins on the merits or on the main issue of the case." Hedicke, 2003-NMCA-032, ¶ 26, 133 N.M. 335, 62 P.3d 1217. This is so even if the party does not prevail "to the extent of his original contention." Id. (internal quotation marks and citation omitted). In determining who was the prevailing party, and whether there was one, "we consider[] all the claims made by both sides in the lawsuit" and we "recognize[] that there can be situations in which neither side is a prevailing party." Aspen Landscaping, Inc., 2004-NMCA-063, ¶ 24, 135 N.M. 607, 92 P.3d 53.
{35} We conclude the trial court did not abuse its discretion in determining that Fort Knox was the prevailing party. While the jury found against Fort Knox on the breach of contract claim, this finding did not result in a judgment in Western's favor. See Hedicke, 2003-NMCA-032, ¶ 29, 133 N.M. 335, 62 P.3d 1217 (considering the absence of judgment in favor of a party in evaluating whether it could be considered a prevailing party). Instead, the trial court entered judgment on the jury verdict in Fort Knox's favor on the negligence claim and awarded it damages based on the verdict. Thus, when we ask who prevailed on the main issue of the case, i.e., whether Western was liable to Fort Knox, we conclude that Fort Knox did.
{36} Western argues that the verdict in favor of Fort Knox on the negligence claim was not really in favor of Fort Knox because the jury found Fort Knox to be thirty percent at fault compared to Western's fault of only ten percent. This argument has no merit. The case resulted in a money judgment against Western, not against Fort Knox.

C. The Attorney Fees Award Was Not Unreasonable
{37} Western also cursorily argues that, even if Fort Knox was entitled to an award of attorney fees, the award was "patently excessive" because it amounted to more *10 than three times the damages apportioned to Western. Fort Knox responds that Western failed to preserve this argument below. We disagree with both parties.
{38} On the question of preservation, Western responded to Fort Knox's supplemental motion for attorney fees in part by arguing that the amount requested was excessive, and Fort Knox replied to this argument. Consequently, the issue was brought to the trial court's attention well before the court ruled on the issue of attorney fees. See Crutchfield v. N.M. Dep't of Taxation & Revenue, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("To preserve error for review, a party must fairly invoke a ruling of the district court on the same grounds argued in this Court.").
{39} On the merits, we are not persuaded by Western's argument that the attorney fees award was excessive and therefore erroneous. We distinguish the cases relied on by Western because both cases involved circumstances distinct from the situation in the present case. See Hiatt v. Keil, 106 N.M. 3, 4, 738 P.2d 121, 122 (1987) (applying a statute permitting a discretionary award of reasonable attorney fees where only a counterclaim was tried, noting that "a claim for attorney fees in defense of a counterclaim is, at the least, to be closely scrutinized"); Thompson Drilling, Inc. v. Romig, 105 N.M. 701, 705-06, 736 P.2d 979, 983-84 (1987) (concluding attorney fees award was unreasonable in part because the case was not particularly complex). Here, Western cannot credibly challenge the reasonableness of Fort Knox's attorney fees because Western incurred a comparable amount of attorney fees in this obviously complex and hotly contested litigation. We conclude the trial court did not abuse its discretion in its attorney fees award.

IV. PREJUDGMENT INTEREST
{40} Western contends the trial court abused its discretion in awarding Fort Knox prejudgment interest because Fort Knox caused unreasonable delay in the determination of its claims. We do not agree.
{41} The purpose of prejudgment interest is "to foster settlement and prevent delay." Weidler v. Big J Enters., Inc., 1998-NMCA-021, ¶ 52, 124 N.M. 591, 953 P.2d 1089 (internal quotation marks omitted). Or, put another way, our legislature allows awards of prejudgment interest "to ensure that just compensation to the tort victim is not eroded by the dilatory tactics of the tortfeasor." Id.
{42} Consequently, unreasonable delay is only one of the two criteria to be considered by a trial court in determining whether to award prejudgment interest. NMSA 1978, § 56-8-4 (1993) provides:
B. The court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering among other things:
(1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and
(2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.
Western has not presented us with any information regarding the second factor. Without such information, we are unable to assess whether the trial court appropriately exercised its discretion because both factors must be considered in order to determine whether the purpose of prejudgment interest is fulfilled in a given case. Without evidence regarding Western's settlement offers, we cannot evaluate whether Western's tactics delayed compensation to Fort Knox. See Weidler, 1998-NMCA-021, ¶ 52, 124 N.M. 591, 953 P.2d 1089.
{43} As to whether Fort Knox unreasonably delayed the litigation, we conclude the trial court could reasonably determine it did not. Western complains that Fort Knox did not commence discovery or request a trial until six months and one year, respectively, after filing its complaint. We observe that such delays are not out of the ordinary in today's litigation climate. We further observe that during the first six months, Western and the other defendants were filing answers and counterclaims and the parties were disqualifying several judges, and in the first year, the parties were engaged in discovery. *11 These activities are relatively par for the course in any complex case, and we see nothing unreasonable about the time frames Western points to. In addition, while Western complains that Fort Knox sought a continuance of the original trial setting, we note that it would be the rare case in which no continuances were requested. To the extent that Western points to Fort Knox's lack of effort between the first and second trial settings, the record reflects that the parties were engaged in additional discovery and motion practice. Nothing in the record suggests that Fort Knox was responsible for any unreasonable delay in bringing the case to trial.

CONCLUSION
{44} We reverse the trial court's refusal to enforce the limitation of liability clause and remand for entry of an order fixing Western's liability at $50,000. We affirm the court's award of attorney fees and prejudgment interest.
{45} IT IS SO ORDERED.
WE CONCUR: A. JOSEPH ALARID and RODERICK T. KENNEDY, Judges.