This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JOHN D. ARNOLD FAMILY**
**LIMITED PARTNERSHIP,**

Plaintiff/Appellee/Cross-Appellant,

v.                                        **NOS. 28,231 and 28,290**

**ROSAMARIA DELGADILLO,**

Defendant/Appellant/Cross-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**William F. Lang, District Judge**

Cadigan & Park Law Firm, P.C.
Alfred A. Park
Lawrence M. Marcus
Albuquerque, NM

for Appellee/Cross-Appellant

Pedro G. Rael
Los Lunas, NM

for Appellant/Cross-Appellee

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

This case concerns a lease agreement between Plaintiff John D. Arnold Family Limited Partnership (the Partnership) and Enchantment Ballroom, Inc. (Enchantment). The Partnership brought a claim for breach of lease against Defendants Rosamaria Delgadillo (Delgadillo) and Nancy Carrie Seidman (Seidman). Delgadillo counterclaimed against the Partnership and the district court ultimately granted summary judgment in favor of the Partnership on some claims, tried one claim to the bench, and submitted another claim to the jury. The end result was that no party was successful in its claims and both parties appeal. We hold that Delgadillo failed to prove an agency relationship required for her breach of lease counterclaim, Delgadillo failed to establish her right to an unjust enrichment claim, the uniform jury instructions given by the district court were appropriate, and neither party had a right to attorney fees. Therefore, we affirm.

**BACKGROUND**

Delgadillo, Seidman, and Shawkeet "Chip" Hindi, II (Hindi) formed the corporation, Enchantment. They signed a commercial lease with the Partnership for the purpose of opening a dance studio. The lessor in this case, the Partnership, is a limited family partnership that includes John D. Arnold and Lois Hindi, the

grandfather and mother of Hindi, respectively.

Enchantment apparently sold stock in its corporation to Delgadillo, using the proceeds to complete part of the necessary renovations. The parties agree that shortly after the dance studio opened, the members of Enchantment began to quarrel among themselves. Thereafter, the parties' characterization of events differs. Delgadillo alleges that Hindi mistreated her and that, although she tried to resolve their differences, she was forced from the premises. Hindi agrees that the parties quarreled, but he alleges that Delgadillo voluntarily abandoned the premises and was allowed to continue as an instructor.

Regardless, the parties agree that when Delgadillo vacated the premises in the summer of 2002, Hindi was the only remaining tenant. Hindi continued to pay rent on the lease for some time, but he discontinued paying rent in 2003, eventually declaring bankruptcy. Approximately one year after Delgadillo vacated the premises, Hindi sent a letter to Delgadillo, offering to buy Delgadillo out of Enchantment and warning her that she would still be responsible for the remaining lease payments of $240,000 if she did not accept his offer. Delgadillo refused Hindi's offer.

In 2004, the Partnership filed a lawsuit against Delgadillo and Seidman after it failed to receive any rental payments for ten months. Seidman was dismissed after

3

settlement, leaving Delgadillo as the only defendant. Delgadillo counterclaimed against the Partnership for breach of lease and fiduciary obligations, fraud, and unjust enrichment. The Partnership moved for summary judgment on all counterclaims.

Delgadillo's fraud claim was withdrawn during the summary judgment proceedings. The district court found issues of material fact precluding summary judgment on the issue of agency and allowed Delgadillo's claim for unjust enrichment to go forward to be tried to the bench. It found no issues of material fact on Delgadillo's breach of lease claim and granted summary judgment in favor of the Partnership on that claim. The Partnership's breach of lease claim against Delgadillo was submitted to the jury. Both the Partnership's and Delgadillo's claims were denied, with the net result of no party winning on any claim. The district court also denied both parties' requests for attorney fees. Both sides appeal. We affirm the decisions of the district court and the jury verdict.

**DELGADILLO'S COUNTERCLAIM FOR BREACH OF LEASE**

The district court granted summary judgment in favor of the Partnership on Delgadillo's counterclaim for breach of lease, finding that no genuine issues of material fact existed on that issue. It allowed the unjust enrichment claim to go forward explaining, "I believe there is a sufficient basis in the report to meet the

burden at this stage of the proceeding to support the underlying contention of agency so, predicated on that, I think, also, that there is a genuine issue of material fact relative to the unjust enrichment claim." At the conclusion of the hearing, Delgadillo asked the court to clarify: "You're allowing us to go to trial on the counterclaim of unjust enrichment and it is going to hinge on agency as well[?]" The court responded, "[w]ithout the agency, we don't get there on the whole thing. It's all kind of tied in together but, suffice it to say, you've survived this far."

"Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. We generally review a grant of summary judgment de novo. *See id.* "The movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Roth v. Thompson*, 113 N.M. 331, 334-35, 825 P.2d 1241, 1244-45 (1992) (citation omitted). A party opposing summary judgment may not simply argue that evidentiary facts requiring a trial on the merits may exist, "nor may [a party] rest upon the allegations of the complaint." *Dow v. Chilili Coop. Ass'n*, 105 N.M. 52, 54-

55, 728 P.2d 462, 464-65 (1986). Instead, "the party opposing summary judgment has the burden to show at least a reasonable doubt, rather than a slight doubt, as to the existence of a genuine issue of fact." *Eisert v. Archdiocese of Santa Fe*, 2009-NMCA-042, ¶ 10, 146 N.M. 179, 207 P.3d 1156 (internal quotation marks and citation omitted), *cert. denied*, 2009-NMCERT-004, 146 N.M. 641, 213 P.3d 791.

Delgadillo advances two arguments in support of her position that summary judgment was improper. First, she argues that Hindi's behavior constituted constructive eviction and that his behavior should be imputed to the Partnership because Hindi was acting as the Partnership's agent. Second, she asserts that the Partnership breached the lease by violating the covenant of good faith and fair dealing by allowing Hindi to make varied offers of settlement. Both of these arguments depend on the existence of an agency relationship between Hindi and the Partnership since Delgadillo put forth no evidence that the Partnership ever acted directly. Further, because Delgadillo's allegations are centered on Hindi's actions, the Partnership's alleged liability depends on the existence of some kind of implied agency relationship between Hindi and the Partnership.

"[I]t is established law that our appellate courts will affirm a district court's decision if it is right for any reason, so long as the circumstances do not make it unfair

to the appellant to affirm." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901; *see also State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the 'right for any reason' doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)). While we disagree with the district court's reasoning for its decision on summary judgment, we uphold that decision because Delgadillo failed to establish that issues of material fact existed on an essential element of agency. As such, her claim for breach of contract must fail.

"'An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation.'" *Madsen v. Scott*, 1999-NMSC-042, ¶ 8, 128 N.M. 255, 992 P.2d 268 (quoting UJI 13-401 NMRA). The agency relationship may be either express "or implied by a course of conduct showing an intention that the relationship exists." UJI 13-401.

It is not necessary that the parties intend to create the legal relationship of agency or to subject themselves to the liabilities which

7

> the law imposes upon them as a result of it, but only that the principal has in some manner indicated that the agent is to act for him, and that the agent so acts or agrees to act on his behalf and subject to his control.

*Totah Drilling Co. v. Abraham*, 64 N.M. 380, 386-87, 328 P.2d 1083, 1087 (1958).

Once an agency is established, a principal is generally liable for the actions of his agent when the agent was acting within the scope of the agent's employment and the principal had the right to control the manner in which the agent performed the action. *See* UJI 13-402 NMRA. Even when there was no actual right of control, the principal may still be liable for the actions of the agent if apparent authority exists. *See Diversified Dev. & Inv., Inc. v. Heil*, 119 N.M. 290, 296, 889 P.2d 1212, 1218 (1995). This apparent authority exists if the principal manifests to a third party that the agent acts for him. *Id.* "To establish apparent authority, the relying party must base the relationship upon words or acts of the principal, and not the representations or acts of the agent." *Tercero v. Roman Catholic Diocese of Norwich*, 2002-NMSC-018, ¶ 12, 132 N.M. 312, 48 P.3d 50 (internal quotation marks and citation omitted); *see also Romero v. Mervyn's*, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989) (explaining that while actual authority is determined in light of the principal's manifestations to the agent, apparent authority arises from the principal's manifestations to third parties).

The existence of both an implied agency relationship and apparent authority are usually questions of fact for the jury. *Phillips v. United Serv. Auto Ass'n*, 91 N.M. 325, 330, 573 P.2d 680, 685 (Ct. App. 1977); *State v. DeBaca*, 82 N.M. 727, 728, 487 P.2d 155, 156 (Ct. App. 1971). This is because the proof is generally found in the acts and conduct of the parties, rather than the introduction of a contract establishing the relationship. *DeBaca*, 82 N.M. at 729, 487 P.2d at 157.

However, we see nothing in the record in this case to indicate that Delgadillo even alleged during the summary judgment proceedings that the Partnership itself ever represented to Delgadillo that Hindi was its agent. Instead, it appears Delgadillo simply accepted Hindi's assertions that Delgadillo was prohibited from dealing with the landlord herself. She does not introduce any evidence, nor does she even argue, that the Partnership or any of its members ever actually told her she was required to deal with Hindi on its behalf. *See Totah*, 64 N.M. at 386-87, 328 P.2d at 1087 (noting that while it is not necessary that the parties intend to create a legal relationship of agency, it is necessary that the principal indicate that the agent is to act for him and that the agent agrees to act on the principal's behalf and subject to his control). This lack is critical. Even if we assume Hindi's behavior suggested an agency relationship between himself and the Partnership, the agent's assertion alone is not enough. If it

were, any person or business could be held liable for acts committed by an individual with which it had no relationship simply based on that individual's claims.

Delgadillo cites to *Warren v. New York Life Insurance Co.*, 40 N.M. 253, 58 P.2d 1175 (1936), for the proposition that the close family relationship between members of the Partnership and Hindi was sufficient to establish an agency relationship. We disagree. *Warren* involved rescission of a disability policy. After discovering that the plaintiff had failed to disclose certain medical information in his application, the insurance company sent a letter stating that it wished to rescind the policy with a check for all premiums paid. *Id.* at 254-56, 58 P.2d at 1176-77. Thereafter, the plaintiff held the check for at least six months. *Id.* at 262-63, 58 P.2d at 1181. His wife, apparently without his knowledge or consent, deposited the check, signing on his behalf. *Id.* at 256, 58 P.2d at 1177. Upon finding out that his wife had deposited the check two or three months later, the plaintiff did nothing until more than three years had passed. *Id.* at 263, 58 P.2d at 1181. Our Supreme Court held "that retention of the check for the period here shown in the face of the notice accompanying same without challenge of the right claimed accomplished mutual rescission." *Id.*

*Warren* is inapplicable to the current case for at least two reasons. First, the

basis for the Supreme Court's decision was not agency theory, although the Court did explain that the plaintiff's failure to repudiate his wife's actions for more than three years also constituted acquiescence under the circumstances. *Id.* at 263-64, 58 P.2d at 1181-82. Instead, the Court based its decision on the plaintiff's unreasonably lengthy retention of the check. Second, as the Partnership correctly points out, *Warren* involved the relationship between a husband and wife, a relationship of special significance. The inference of the wife's authority to act was especially strong because the wife had already been acting as her husband's agent throughout the process of handling his insurance claim while he was ill. *Id.* at 264, 58 P.2d at 1181-82.

Conversely, this case involves a more distant family relationship—that of grandson to grandfather. More importantly, unlike in *Warren*, no evidence was presented that the agency relationship ever came into being; nothing indicates that the Partnership ever represented that Hindi was its agent. On the contrary, the fact that Hindi was included as a lessee on the lease indicates he is better viewed as an agent of Enchantment rather than the Partnership and that the disagreements between Hindi, Delgadillo, and Seidman were over how to run Enchantment together. *See, e.g.*, *Mitchell v. McCutcheon*, 33 N.M. 78, 80, 260 P. 1086, 1087 (1927) (noting that

"[i]nherently the relations of lessor and lessee, and of vendor and vendee, involve no agency" and stating that "the claim of agency in such cases must rest upon positive provision of the statute").

We therefore do not consider the issues of ratification and acquiescence because they are concerned with the scope of the agent's authority, rather than the existence of the relationship in the first place. *See Bd. of County Comm'rs v. Chavez*, 2008-NMCA-028, ¶ 15, 143 N.M. 543, 178 P.3d 828 (filed 2007) (reiterating that ratification is the adoption by the principal of an unauthorized act of his agent), *cert. denied*, *State v. Torrez*, 2008-NMCERT-002, 143 N.M. 666, 180 P.3d 673. Once the Partnership had made a prima facie case for summary judgment, Delgadillo was required to put forth some evidence establishing the existence of an agency relationship. She failed to do so. Even viewing the evidence in the light most favorable to Delgadillo, she failed to introduce any evidence that would suggest the Partnership had ever represented that Hindi was its agent, an essential element of the creation of an agency relationship. Summary judgment was therefore appropriate, and we affirm.

**DELGADILLO'S COUNTERCLAIM FOR UNJUST ENRICHMENT**

Delgadillo's counterclaim for unjust enrichment was tried to the court

concurrently with the jury trial on the Partnership's complaint for breach of lease against Delgadillo. After the testimony at trial, the Partnership moved for judgment as a matter of law on Delgadillo's unjust enrichment claim based on two theories. First, the Partnership argued that Delgadillo did not actually own the claim for unjust enrichment because she had received corporate stock from Enchantment in exchange for the money that she contributed for the improvements. Any claim for unjust enrichment would therefore belong to Enchantment rather than to Delgadillo. Second, the Partnership asserted that Delgadillo failed to establish the elements for unjust enrichment.

The district court agreed and granted the Partnership's motion. Specifically, it found that Delgadillo did not own the claim for unjust enrichment. It also noted that Delgadillo had failed to introduce any evidence that the Partnership had requested the improvements or that she had reasonably believed she owned the property.

We review the district court's grant or denial of equitable relief for an abuse of discretion. *Credit Inst. v. Vet. Nutrition Corp.*, 2003-NMCA-010, ¶ 17, 133 N.M. 248, 62 P.3d 339 (filed 2002). "An abuse of discretion will be found when the trial court's decision is clearly untenable or contrary to logic and reason." *Newsome v. Farer*, 103 N.M. 415, 420, 708 P.2d 327, 332 (1985). When reasons both supporting

and detracting from a decision exist, there is no abuse of discretion. *Talley v. Talley*, 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct. App. 1993). A district court has "broad discretion" and "great flexibility" in its decisions regarding equitable remedies. *See In re Estate of Duran*, 2003-NMSC-008, ¶ 35, 133 N.M. 553, 66 P.3d 326.

In New Mexico, a cause of action for unjust enrichment requires that "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 11, 129 N.M. 200, 3 P.3d 695. However, this equitable remedy should not take the place of a remedy at law; rather, it augments legal remedies. *Id.* ¶ 12.

We see no abuse of discretion in the district court's decision. Delgadillo was reimbursed for her financial contributions with corporate stock in Enchantment. Delgadillo agreed to this arrangement. As the district court found, any unjust enrichment claim would therefore belong to Enchantment, making a derivative suit on behalf of Enchantment proper, rather than a personal suit on behalf of Delgadillo. *Marchman v. NCNB Tex. Nat'l Bank*, 120 N.M. 74, 81, 898 P.2d 709, 716 (1995) (reiterating that "[a] corporation and a shareholder—even a sole shareholder—are separate entities, and a shareholder of a corporation does not have an individual right

14

of action against a third person for damages that result because of an injury to the corporation").

> There are exceptions to the general rule that a shareholder cannot sue individually for injuries to his or her corporation[, including when] there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder [and when] the shareholder suffered an injury separate and distinct from that suffered by other shareholders.

*Id.* at 81-82, 898 P.2d at 716-17 (internal quotation marks and citation omitted). However, those exceptions do not apply in the case at hand. Delgadillo had already been compensated with stock for her financial contributions. Moreover, she argued at trial that she never intended to be liable personally on the lease. Any special contractual duties would therefore lie between the Partnership and Enchantment, rather than between the Partnership and Delgadillo. Nor did Delgadillo offer evidence that she had suffered an injury separate and distinct from other shareholders. At the time she made the investment, she was compensated. The subsequent demise of the corporation and the devaluation of her investment does not render her losses separate and distinct from other members of the corporation. Presumably, the other members also took losses.

Regardless, we cannot say that the district court's decision is "clearly untenable or contrary to logic and reason." *Newsome*, 103 N.M. at 420, 708 P.2d at 332. We

therefore affirm and do not consider the parties' other arguments.

**JURY INSTRUCTIONS**

The Partnership's breach of contract claim against Delgadillo was tried to the jury. The Partnership requested that the district court include a jury instruction stating: "A contract signed personally by an individual with no qualifying language following the signature results in personal liability on the contract. If you find that Defendant Delgadillo signed the lease, with no writing after her signature, you must find that she is personally responsible for making the lease payments."

The district court refused this instruction. Instead, the district court included an instruction indicating that if Delgadillo wanted to establish her affirmative defense of no personal liability under the lease, "Defendant Delgadillo has the burden of proving that the lease was signed by her on behalf of Enchantment Ballroom, Inc., and was not intended to create any personal liability as against her."

"The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *Akins v. United Steelworkers of Am.*, 2009-NMCA-051, ¶ 42, 146 N.M. 237, 208 P.3d 457 (internal quotation marks and citation omitted), *cert. granted*, 2009-NMCERT-005, 146 N.M. 728, 214 P.3d 793. Jury instructions are to be read as a whole, and when they fairly present the issues and the applicable

16

law in light of the evidence presented at trial, they are sufficient. *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 16, 125 N.M. 748, 965 P.2d 332. "It is not error to deny requested instructions when the instructions given adequately cover the law to be applied." *Kirk Co. v. Ashcraft*, 101 N.M. 462, 466, 684 P.2d 1127, 1131 (1984). Moreover, even if there is error, "[a] civil case will not be reversed due to error in jury instructions unless the result is fundamentally unjust." *McNeill v. Burlington Res. Oil & Gas Co.*, 2007-NMCA-024, ¶ 19, 141 N.M. 212, 153 P.3d 46 (filed 2006), *aff'd*, 2008-NMSC-022, 143 N.M. 740, 182 P.3d 121.

The Partnership asserts that the district court was required to provide its instruction to the jury because New Mexico law states that "[a] contract signed personally by an individual with no qualifying language following the signature results in personal liability on the contract." *Fed. Deposit Ins. Corp. v. Moore*, 118 N.M. 77, 79, 879 P.2d 78, 80 (1994). The Partnership also argues that because it is undisputed that Delgadillo signed the lease with no qualifying language after her name and that she did not pay the money she owed on the lease, the jury verdict was likely a consequence of the district court's error.

We disagree with the Partnership's assertion that the district court was required to give its requested instruction. While it is true that our Supreme Court upheld a

17

district court's determination of personal liability for failure to include a corporate designation in that case, *id.*, *Moore* is easily distinguishable from this case. *Moore* concerned a guarantee contract under which the guarantors were attempting to argue that they had not intended to sign in their personal capacities. *Id.* at 78-79, 879 P.2d at 79-80. The Supreme Court held that the inclusion of the corporation name on an accompanying acknowledgment form, by itself, was insufficient to constitute an issue of material fact as to capacity, in light of the fact that there would be no purpose in a corporation guaranteeing its own debt. *Id.* at 79, 879 P.2d at 80.

Here, the lease itself refers to Enchantment. Delgadillo also testified that she never intended to bind herself personally and that the corporation was created to protect herself and the others from personal liability. The Partnership did not object to this testimony at the time it was offered. Unlike the guarantor contract in *Moore*, a reasonable rationale exists as to why Delgadillo would mean to sign the lease only in her corporate capacity. As such, the district court was not required to offer an instruction regarding Delgadillo's alleged personal liability. Moreover, the district court utilized uniform jury instructions, which we have previously held to be the preferred instructions unless they are erroneous or otherwise improper. *See, e.g.*, *First Nat'l Bank in Albuquerque v. Sanchez*, 112 N.M. 317, 322, 815 P.2d 613, 618 (1991)

18

(explaining that "published uniform jury instructions must be used unless under the facts or circumstances of the particular case they are erroneous or otherwise improper, and the trial court states its reasons for refusing to use them").

Under these circumstances, the district court did not err in refusing the Partnership's proffered instruction. Moreover, even if we held that the district court erred, the jury instructions, read as a whole, fairly and accurately represented the issues and applicable law. Further, we do not characterize the jury verdict as "fundamentally unjust." We therefore affirm.

**ATTORNEY FEES**

At the conclusion of trial, both sides requested that the district court award them attorney fees and costs, pursuant to the lease agreement. The district court denied both applications on the grounds that there was no prevailing party. The court stated:

> I can define prevailing party in ten different ways, depending on the issue, but it is the totality of the case which the [c]ourt looks at; and in that case, each side prevailed in basically half the case; those two matters that were ultimately tried, one by the [c]ourt and one by the jury, and it ended up with neither side being in a different position than they were when they walked in the door on the first day of trial.

"A trial court's determination concerning an award of attorney fees is reviewed only for abuse of discretion." *Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶ 21, 135 N.M. 607, 92 P.3d 53. "While a trial court has broad

19

discretion when awarding attorney fees, that discretion is limited by any applicable contract provision." *Fort Knox Self Storage, Inc. v. W. Techs., Inc.*, 2006-NMCA-096, ¶ 29, 140 N.M. 233, 142 P.3d 1. "Consequently, this Court looks to the contract language to determine the parties' intentions." *Id.*

The pertinent contract language in this case merely specifies that the "prevailing party" is entitled to reasonable attorney fees and costs. The manner in which a prevailing party is identified often depends on the complexity of the proceedings. *See Aspen Landscaping, Inc.*, 2004-NMCA-063, ¶¶ 23-24. For example, in simple cases involving no counterclaims, the "prevailing party" has been described as "the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." *Dunleavy v. Miller*, 116 N.M. 353, 360, 862 P.2d 1212, 1219 (1993); *see also Aspen Landscaping, Inc.*, 2004-NMCA-063, ¶ 23 (observing that the *Dunleavy* definition applies with respect to simple cases involving no counterclaims). In cases involving more varied issues, the prevailing party may be identified as "the party who wins on the merits or on the main issue of the case." *Hedicke v. Gunville*, 2003-NMCA-032, ¶ 26, 133 N.M. 335, 62 P.3d 1217 (filed 2002). In complicated cases involving numerous claims and counterclaims, the extent to which the parties prevailed on their various claims and counterclaims is evaluated.

20

*See Aspen Landscaping, Inc.*, 2004-NMCA-063, ¶ 24. Moreover, a court may appropriately determine that no litigant should be classified as the prevailing party. *See Fort Knox Self Storage, Inc.*, 2006-NMCA-096, ¶ 34; *Aspen Landscaping, Inc.*, 2004-NMCA-063, ¶ 24; *see also Hedicke*, 2003-NMCA-032, ¶ 28 ("Of course, if each party prevails on one claim and loses on one claim, the trial court could and may conclude that neither is ultimately a prevailing party.").

Both parties were not successful on any of their claims. Under these circumstances and given our case law, the district court's finding that no party was the "prevailing party" was not an abuse of discretion. We therefore affirm the district court's denial of attorney fees to both parties.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**ROBERT E. ROBLES, Judge**

21